**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JERRY RODRIGUEZ, MARSHA** | § | |
| **RODRIGUEZ,** *individually and as* | § | |
| *next friend of* **L.L.S.***, a minor***, and** | § | |
| **ELVIA RODRIGUEZ,** | § | |
| | § | |
| *Plaintiffs,* | § | **EP-24-CV-420-KC** |
| **v.** | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Jerry Rodriguez, Marsha Rodriguez, individually and as next friend of L.L.S., a minor, and Elvia Rodriguez, bring this personal injury action against Defendant United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* Plaintiffs seek damages for injuries they allegedly suffered in a collision during a pretextual traffic stop targeting suspected undocumented non-citizens.

In both their original and amended complaints, Plaintiffs allege that a United States Border Patrol (USBP) agent caused the collision. *See* Compl. ¶ 12, ECF No. 1; Am. Compl. ¶ 12, ECF No. 3. Defendant later moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing—with supporting exhibits—that the collision involved a Texas Department of Public Safety (DPS) officer rather than a USBP agent and that, as a result, sovereign immunity is

not waived under the FTCA because the incident did not involve an "[e]mployee of the government" under 28 U.S.C. § 2671.  *See generally* Def.'s Mot., ECF No. 11.

Before the Court is Plaintiffs' "Motion for Leave to File Second Amended Complaint" ("Motion") (ECF No. 18), in which they seek to amend their complaint a second time to address the issues raised in Defendant's pending Rule 12(b)(1) motion by alleging that the DPS officer caused the collision while under USBP control.  Mot. at 1–2, ECF No. 18; Mot., Ex. 1, at 1–5 (Proposed Second Amended Complaint) [hereinafter Proposed SAC], ECF No. 18-1.  Defendant opposes the Motion, arguing that the Proposed SAC is futile because it still fails to establish an FTCA waiver of sovereign immunity.  Resp. in Opp'n at 6–26, ECF No. 25.  The Honorable District Judge Kathleen Cardone referred the Motion to the undersigned Magistrate Judge under 28 U.S.C. § 636(b).  For the reasons below, the Court **DENIES** Plaintiffs' Motion.

## STANDARD

After a party has amended a pleading once as a matter of course, further amendments require the court's leave or the adverse party's consent.  Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires."  *Id.*  The Fifth Circuit enforces this "generous standard," *B.A. Kelly Land Co. v. Aethon Energy Operating, L.L.C.*, 25 F.4th 369, 384 (5th Cir. 2022), applying a presumption in favor of permitting amendments, *CH Offshore, Ltd. v. Mexiship Ocean CCC S.A. de C.V.*, 163 F.4th 171, 182 (5th Cir. 2025).  This presumption extends to amendments correcting defective allegations of subject

matter jurisdiction. *See Watkins v. Lujan*, 922 F.2d 261, 264 (5th Cir. 1991). So, "[t]here must be a substantial reason to deny leave to amend." *Vuoncino v. Forterra, Inc.*, 140 F.4th 200, 207 (5th Cir. 2025). Substantial reasons include undue delay, bad faith or dilatory motive, undue prejudice, and futility. *Clark v. Dep't of Pub. Safety & Corr.*, 141 F.4th 653, 662 (5th Cir. 2025).

Defendant's only asserted reason for opposing leave here is futility. Courts evaluate futility under the same standard that governs dismissal under Rule 12(b)(6). *Id.* Thus, courts deny leave to amend if the proposed amended complaint "would fail to state a claim upon which relief could be granted." *United States of Am. ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758, 763 (5th Cir. 2025). In applying the Rule 12(b)(6) standard, courts view the proposed amended complaint in the light most favorable to plaintiffs and resolve every doubt in their favor. *CH Offshore*, 163 F.4th at 184. Courts apply the Rule 12(b)(6) standard only on the facts alleged in the proposed amended complaint and any documents attached to it or incorporated by reference. *Rx Sols., Inc. v. Caremark, L.L.C.*, 164 F.4th 436, 441 (5th Cir. 2026).

## DISCUSSION

In their Proposed SAC, Plaintiffs claim they were injured in a collision caused by the negligence of DPS Special Agent Damon Samford, who was then under USBP control and acting "under color of Federal authority," and they describe the events as follows. Proposed SAC ¶¶ 11, 17. On August 4, 2023, DPS Trooper Danny Martinez alerted other DPS officers, including Samford, that USBP was pursuing a silver 2020

Chevrolet Equinox that had turned around at a USBP checkpoint. *Id.* ¶ 13. After spotting the Equinox, Martinez informed the other DPS officers, including Samford, that it "was loaded" with undocumented non-citizens. *Id.* ¶ 14. Martinez then initiated a pretextual traffic stop after observing a seatbelt violation. *Id.*

As Martinez initiated the stop, Samford arrived and, relying on his experience with fleeing smugglers, positioned his vehicle in front of the Equinox to contain it. *Id.* ¶ 15. While reversing, Samford's rear bumper collided with the Equinox's front bumper, causing damage. *Id.* The stop revealed only a family and luggage inside, with no undocumented non-citizens present. *Id.* ¶ 16. Martinez issued driver Jerry Rodriguez a warning for the seatbelt violation, and Samford exchanged information with him. *Id.* Both DPS officers then left the scene. *Id.*

In its opposition brief, Defendant argues that Plaintiffs' Proposed SAC is futile. It asserts that, like their original and amended complaints, the Proposed SAC still fails to establish an FTCA waiver of sovereign immunity because it does not establish that Samford was a federal employee for FTCA purposes. Resp. in Opp'n at 15–26. Defendant maintains that Samford could qualify as a federal employee under 28 U.S.C. § 2671 "if, and only if," a "287(g) agreement"[1] under 8 U.S.C. § 1327(g) existed between DPS and the United States Department of Homeland Security (DHS). *Id.* at 14–16. Otherwise, Defendant contends, the FTCA provides no other avenue for waiver of immunity in this case. *Id.* at 17–26.

---

[1] "The term '287(g)' refers to Section 287(g) of the Immigration and Nationality Act, which is codified in 8 U.S.C. § 1357(g). *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 177 n.5 (5th Cir. 2018).

After due consideration, the Court disagrees with Defendant's argument that a 287(g) agreement is the only possible basis for the FTCA waiver of immunity here, but agrees that Plaintiffs' Proposed SAC fails to plausibly allege that Samford was a federal employee for FTCA purposes.

## I.   Sovereign immunity and the FTCA's limited waiver

The United States enjoys sovereign immunity and cannot be sued without its consent.  *United States Postal Serv. v. Konan*, 607 U.S. ---, No. 24-351, 2026 WL 501765, at *2 (U.S. Feb. 24, 2026).  Sovereign immunity is jurisdictional in nature and deprives courts of the power to hear suits against the United States absent Congress's express consent.  *United States v. Miller*, 604 U.S. 518, 527 (2025).  By means of the FTCA, Congress waived that sovereign immunity for certain tort suits based on the conduct of federal employees.  *Konan*, 2026 WL 501765, at *2 (citing 28 U.S.C. §§ 2674, 1346(b)).  Thus, federal courts have jurisdiction over FTCA claims against the United States if they are actionable under 28 U.S.C. § 1346(b). *Brownback v. King*, 592 U.S. 209, 212 (2021).

An FTCA claim is actionable for the tortious conduct of an "employee of the government" if the plaintiff alleges it to be:

    (1) against the United States;

    (2) for money damages;

    (3) for injury or loss of property, or personal injury or death;

    (4) caused by the negligent or wrongful omission of any *employee of the government*;

    (5) while acting within the scope of his office or employment; and

(6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*King*, 592 U.S. at 212 (emphasis added) (citing 28 U.S.C. § 1346(b)(1)).  In the unique context of the FTCA, all these six elements are also jurisdictional.  *Id.* at 217.  The plaintiff need not prove a § 1346(b)(1) jurisdictional element for a court to maintain subject-matter jurisdiction over his claim, but he "must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim."  *Id.* at 217–18.

Here, Defendant challenges only whether Plaintiffs' Proposed SAC plausibly alleges that Samford was a federal employee for FTCA purposes—that is, part of the fourth FTCA element.  Because Plaintiffs fail to plausibly allege that jurisdictional element, the Court confines its analysis to that issue and does not reach the remaining elements.

## II.    Federal employee for FTCA purposes

The statutory definition of "employee of the government" for purposes of 28 U.S.C. § 1346(b)(1) is supplied by 28 U.S.C. § 2671, and that definition controls even if it departs from the phrase's ordinary meaning.  *See Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning.").  Under § 2671, an "[e]mployee of the government" includes five categories of personnel:

(1) officers or employees of any federal agency;

(2) members of the military or naval forces of the United States;

(3) members of the National Guard (under certain circumstances);

(4) persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation; and

(5) any officer or employee of a Federal public defender organization (with one exception).

28 U.S.C. § 2671.

Particularly relevant here, the fourth category—the FTCA's "official-capacity" clause—is "meant to cover the 'dollar-a-year' man who is in government service without pay *or* an individual who is directly supervised by a federal agency pursuant to an agreement." *Rodriguez v. Sarabyn*, 129 F.3d 760, 766 (5th Cir. 1997) (emphasis added) (citing *Logue v. United States*, 412 U.S. 521, 531 (1973) (examining the FTCA's legislative history to determine the official-capacity clause's scope)).

The Fifth Circuit has yet to provide guidance on when non-federal personnel may qualify as federal employees under the FTCA's official-capacity clause. But most other circuits agree that the "control" test from *Logue v. United States*, 412 U.S. 521 (1973)—which distinguishes federal employees from independent contractors—also governs whether non-federal personnel qualify as federal employees under that clause.[2]

---

[2] *See, e.g.*, *Laible v. Lanter*, 91 F.4th 438, 444 (6th Cir. 2024) (explaining that the Supreme Court did not limit the *Logue* control test to distinguishing independent contractors from federal employees and that the test "simply sets the threshold that an individual with some kind of arrangement with the federal government must meet to be considered a federal employee for purposes of the official capacity clause."); *Sisto v. United States*, 8 F.4th 820, 830 (9th Cir. 2021) (acknowledging that "the Supreme Court applies the ordinary 'control test' to [the official-capacity clause] of § 2671" (citing *Logue*, 412 U.S. at 531–32)); *U.S. Tobacco Coop. Inc. v. Big South Wholesale of Virginia, L.L.C.*, 899 F.3d 236, 257 (4th Cir. 2018) (applying control test and finding that confidential informants were "sufficiently

In the Fifth Circuit, the *Logue* control test turns on "the power of the federal government to control the detailed physical performance of the individual." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). The key is not whether the individual "receives federal money and must comply with federal standards and regulations, but whether [his] day-to-day operations are supervised by the Federal Government." *Cavazos By & Through Cavazos v. United States*, 776 F.2d 1263, 1264 (5th Cir. 1985) (cleaned up). That the federal government may "fix specific and precise conditions to implement federal objectives does not convert the acts of [an individual] into federal government acts." *Id.* The Fifth Circuit has also identified the following additional factors as relevant to this determination:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

---

controlled by, and subject to the control of, the ATF . . . so as to be found to be federal employees acting in an official capacity on behalf of the United States"); *Means v. United States*, 176 F.3d 1376, 1380 (11th Cir. 1999) (noting that "[c]ases after *Logue* well support the application of the control test [to determine federal-employee status under the official-capacity clause] regardless of whether the independent contractor exception is at issue."); *Charlima, Inc. v. United States*, 873 F.2d 1078, 1080 (8th Cir. 1989) (applying control test despite that independent-contractor exception was not at issue); *Leone v. United States*, 910 F.2d 46, 51 (2d Cir. 1990) (applying the control test to determine whether FAA-designated aviation medical examiners qualified as federal employees under the official-capacity clause).

(f)  the length of time for which the person is employed;

(g)  the method of payment, whether by the time or by the job;

(h)  whether or not the work is a part of the regular business of the employer;

(i)  whether or not the parties believe they are creating the relation of master and servant; and

(j)  whether the principal is or is not in business.

*Linkous*, 142 F.3d at 276 (quoting Restatement (Second) of Agency § 220 (1958)).

Congress has also enacted other statutes that complement § 2671's definition of "[e]mployee of the government" by conferring FTCA federal-employee status on certain non-federal personnel.[3]  Particularly relevant here is 8 U.S.C. § 1357(g)(7), which provides:

> Except as provided in paragraph (8), an officer or employee of a State or political subdivision of a State performing functions under this subsection shall not be treated as a Federal employee for any purpose other than for purposes of chapter 81 of Title 5 (relating to compensation for injury) and sections 2671 through 2680 of Title 28 (relating to tort claims).

---

[3] *See, e.g.*, 5 U.S.C. § 3374(c)(2) (treating certain state or local employees detailed to a federal agency as federal employees for FTCA purposes); 16 U.S.C. § 4604(c)(2) (treating Take Pride in America volunteers as federal employees for FTCA purposes); *id.* § 670c(d) (treating recreation volunteers at military installations as federal employees for FTCA purposes); *id.* § 742f(c)(4) (treating Interior and NOAA program volunteers as federal employees for FTCA purposes); 22 U.S.C. § 2504(i) (treating Peace Corps volunteers as federal employees for FTCA and other federal tort statutes); 25 U.S.C. §§ 1680c(e)(1), 5321(d) (treating certain non-IHS providers, tribal entities, and their employees as federal or Public Health Service employees for FTCA purposes, expressly cross-referencing 28 U.S.C. § 2671); 28 U.S.C. § 677(c) (treating judicial-branch volunteers as federal employees only for FTCA purposes); 32 U.S.C. §§ 509(i)(1)(B), 709(d) (treating National Guard Challenge trainees and technicians as federal employees, including for FTCA coverage); 42 U.S.C. § 233(g)–(o) (treating qualifying health centers and clinicians, including certain free-clinic professionals, as Public Health Service employees and channels malpractice claims into the FTCA); and 43 U.S.C. § 50d (treating certain U.S. Geological Survey science students and recent graduates as federal employees for FTCA purposes).

### III.    Contrary to Defendant's argument, a 287(g) agreement is not the only possible basis for the FTCA's waiver of immunity here

Here, Defendant relies on § 1357(g)(7) to argue that a state or local officer may be treated as a federal employee for FTCA purposes "if, and only if, the state or local law enforcement agency and DHS (or a component of DHS that has been delegated authority) have a written agreement as defined by § 1357(g)."  Resp. in Opp'n at 13. But that reading stretches § 1357(g)(7) beyond its terms.

Section 1357(g)(1) authorizes DHS to enter into written agreements with state and local governments to allow their officers to perform immigration-officer functions. *See United States v. Texas*, 97 F.4th 268, 292 (5th Cir. 2024) (citing 8 U.S.C. § 1357(g)(1)).  These written agreements are commonly known as 287(g) agreements, referring to the Immigration and Nationality Act section that authorizes them. *See El Cenizo*, 890 F.3d at 177, n.5.  State and local officers covered by a 287(g) agreement must perform their immigration functions under federal supervision and authorization, and only after receiving appropriate federal immigration training. *Id.* (citing 8 U.S.C. § 1357(g)(1)–(5)).

To be sure, section 1357(g)(7) expressly confers FTCA federal-employee status on state and local officers covered by a 287(g) agreement. *See* 8 U.S.C. § 1357(g)(7). In practice, such officers would also tend to satisfy the *Logue* control test under the FTCA's official-capacity clause because they must act under federal direction and supervision, and may perform immigration-officer functions only after receiving appropriate federal training. *El Cenizo*, 890 F.3d at 177 (citing 8 U.S.C. § 1357(g)(1)–(5)).

But nothing in § 1357(g)(7) suggests that a 287(g) agreement is the exclusive avenue through which state or local officers in this context can qualify as federal employees under the FTCA—and thus trigger its waiver of immunity. At most, § 1357(g)(7) makes that showing straightforward when a 287(g) agreement exists, yet it does not foreclose other avenues by which such officers might qualify as federal employees for FTCA purposes. One such avenue may arise under the FTCA's official-capacity clause when state and local officers cooperate with DHS under § 1357(g)(10).

Section 1357(g)(10) provides that "a 287(g) agreement is *not required* for states 'otherwise to cooperate . . . in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.'" *El Cenizo*, 890 F.3d at 179 (emphasis in original) (quoting 8 U.S.C. § 1357(g)(10)). The Fifth Circuit has explained that "[t]his provision indicates that Congress intended local cooperation without a formal agreement in a range of key enforcement functions." *Id.* Thus, while "state and local officials become de facto immigration officers, competent to act on their own initiative" under a 287(g) agreement, cooperation under § 1357(g)(10) "permit[s] no unilateral [state or local] enforcement activity." *Id.* at 180.

The Fifth Circuit has also noted that DHS has issued guidance on § 1357(g)(10) cooperation confirming that such cooperation "requires a predicate federal request" and must "not conflict with federal priorities or limit federal discretion." *Id.* (quoting DHS, Guidance on State and Local Governments' Assistance in Immigration Enforcement and Related Matters, https://www.dhs.gov/sites/default/files/publications/guidance-state-localassistance-

immigration-enforcement.pdf).    That guidance further criticizes "systemic" local enforcement that "conflicts with the policies or priorities set by the Federal Government or limits the ability of the Federal Government to exercise discretion under federal law whenever it deems appropriate." *Id.*

It follows then, that § 1357(g)(10) cooperation may, depending on the degree of federal control exercised over state and local officers, satisfy the *Logue* control test and render "cooperating" state and local officers federal employees for FTCA purposes.    To be clear, however, mere cooperation under § 1357(g)(10) does not automatically confer FTCA federal-employee status under the official-capacity clause; whether it does so will depend on the particular facts of a case.    *See, e.g.*, *Laible*, 91 F.4th at 451–52 (Readler, J., concurring in part and dissenting in part) ("[T]o act on behalf of a federal agency in an official capacity requires more than merely supporting or aiding a federal agency.    Otherwise, the language 'in an official capacity' would amount to mere surplusage.").

To illustrate, consider the Sixth Circuit's opinion in *Laible v. Lanter*, 91 F.4th 438 (6th Cir. 2024).    Although *Laible* did not address § 1357(g) or 287(g) agreements, its reasoning is especially instructive here.    In *Laible*, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Cincinnati Police Department (CPD) formed a joint federal task force to arrest a suspect, operating under an ATF operational plan that allocated responsibilities between ATF and CPD.    *Laible*, 91 F.4th at 440. During a high-speed chase involving CPD officers, the suspect lost control of his

vehicle and crashed into a restaurant, killing and seriously injuring several patrons. *Id.* at 440–41.

The victims and their estates sued the three CPD officers involved—Scalf, Lanter, and Thomas—for negligence in conducting the high-speed chase. *Id.* at 441. The officers claimed immunity from common-law suits on the ground that, as task-force members, they were federal employees for FTCA purposes. *Id.*; *see also* 28 U.S.C. § 2679(b)(1), (d)(1) (immunizing federal employees from individual common-law tort claims arising within the scope of employment and substituting the United States as defendant). The district court disagreed, holding that none qualified as federal employees for FTCA purposes. *Laible*, 91 F.4th at 441.

On appeal, the Sixth Circuit reversed in part. *Id.* at 440. It held that Scalf was immune because he was a federal employee for FTCA purposes through his deputation to ATF under 5 U.S.C. § 3374(c)(2), but affirmed the denial of immunity for Lanter and Thomas, who were not deputized and acted under CPD—not ATF—control. *Id.*

The court first explained that Scalf "squarely" qualified as a federal employee for FTCA purposes because § 3374(c)(2) expressly confers that status on individuals detailed to a federal agency. *Id.* at 442; *see also* 5 U.S.C. § 3374(c)(2) (treating certain state or local employees detailed to a federal agency as federal employees for FTCA purposes). The court also seemed to imply that, in practice, Scalf also satisfied the *Logue* control test under the FTCA's official-capacity clause, as he carried an ATF badge, wore an ATF uniform, attended ATF training, worked out of an ATF field

office, and was paid by the federal government.  *Laible*, 91 F.4th at 442.  Scalf's deputation to ATF under 5 U.S.C. § 3374(c)(2) closely tracks how 8 U.S.C. § 1357(g)(7) treats state and local officers operating under 287(g) agreements in the immigration context, as explained above.

As for Lanter and Thomas, the Sixth Circuit held that they did not satisfy the *Logue* control test under the FTCA's official-capacity clause.  *Laible*, 91 F.4th at 443–45.  Under the task force's ATF operational plan, neither officer was under ATF's direct supervision: the plan made clear that it was CPD's—not ATF's—role, within the task force, to attempt a traffic stop if the suspect fled, and that any resulting pursuit would be conducted solely under CPD policy.  *Id.*  So, although Lanter and Thomas pursued the suspect while participating in the task force and acting within the framework of the ATF operational plan, ATF's role was supportive, not supervisory over them.  *Id.*

The court also explained, as to Lanter, that even though Scalf authorized aspects of his pursuit of the suspect, that authorization did not place Lanter under ATF's control through Scalf's deputization.  *Id.* at 445.  As to Thomas, the court explained that he was even further removed from federal control: he joined the chase at Lanter's request while on duty at a CPD training facility and wearing a CPD uniform.  *Id.*  Finally, the court noted that CPD—not ATF—investigated and disciplined both Lanter and Thomas for policy violations, underscoring CPD's operational control throughout the incident.  *Id.*

Thus, the Sixth Circuit's application of the *Logue* control test to Lanter and Thomas confirms that non-deputized state and local officers may, in some cases, qualify as federal employees under the FTCA's official-capacity clause, even though Lanter and Thomas themselves did not meet that standard.

Here, nothing in the FTCA or § 1357 suggests that this same principle cannot apply in the immigration context when state and local officers cooperate with DHS under § 1357(g)(10). So, contrary to the Government's argument, even without an express statutory grant of FTCA federal-employee status, if DHS exercises sufficient control over state and local officers' conduct in § 1357(g)(10) cooperation, those officers may likewise satisfy the *Logue* control test.

## IV.    Still, the Proposed SAC is futile because it fails to plausibly allege that Samford was a federal employee for FTCA purposes.

For all that, even when construing the Proposed SAC's allegations in Plaintiffs' favor and resolving every doubt in their favor, Plaintiffs fail to plausibly allege sufficient facts to establish that Samford was a federal employee under the FTCA—and thus trigger its waiver of immunity.

To begin, the Proposed SAC does not allege that a 287(g) agreement existed between DPS and DHS at the time of the collision. Nor could they: although DPS and its Criminal Investigations Division have 287(g) agreements with DHS, they executed those agreements on November 3, 2025, and October 17, 2025,

- 15 -

respectively—more than two years after the collision here.[4]   So Plaintiffs cannot plausibly support FTCA federal-employee status through § 1357(g)(7).

What is more, the Proposed SAC fails to plausibly allege that Samford was a federal employee under the FTCA's official-capacity clause.   Absent Fifth Circuit guidance on what test governs the FTCA's official-capacity clause, the Court follows the approach taken by other circuits and applies the *Logue* control test to determine whether Plaintiffs' allegations plausibly allege that Samford is a federal employee under that clause.

Applying the *Logue* control test, the Proposed SAC does not plausibly allege that USBP had the power to control Samford's "detailed physical performance" during the stop. *Linkous*, 142 F.3d at 275.   At most, it alleges that USBP and DPS shared immigration-enforcement objectives and exchanged information to stop the Equinox, but it pleads no facts supporting an inference that USBP directed or supervised Samford's actions during the stop that led to the collision.   And if, as the Fifth Circuit has explained, the federal government may "fix specific and precise conditions" for carrying out federal objectives without converting an individual's acts into its own, that principle applies with even greater force here, where the allegations suggest only

---

[4] *See* Memorandum of Agreement Between DHS and DPS (Nov. 3, 2025), https://www.ice.gov/doclib/287gMOA/DPS_HwyPatrolTX_TFM_MOA_11032025.pdf; Memorandum of Agreement between DHS and DPS Criminal Investigations Division (Oct. 17, 2025), https://www.ice.gov/doclib/287gMOA/DPS_CID_TX_TFM_MOA_10172025.pdf; *see also Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (courts may take judicial notice of government websites); Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from the sources whose accuracy cannot be reasonably questioned."); *id.* (d) ("The court may take judicial notice at any stage of the proceeding.").

that USBP and DPS cooperated around common goals and shared information to conduct a pretextual traffic stop for suspected undocumented non-citizens. *See Cavazos*, 776 F.2d at 1264.

Indeed, even when construing the Proposed SAC in Plaintiffs' favor, its allegations about the conduct that caused the injury—how Samford drove and positioned his vehicle—point only to his own judgment and experience, not USBP's control. Plaintiffs allege no facts supporting an inference that any USBP agent instructed Samford to use that tactic, occupy that position, "box in" the Equinox in a specific way, or reverse into it at all. Nor do they allege that USBP had authority to dictate those details, commanded the scene, issued real-time tactical orders, or could overrule Samford's on-scene decisions. In short, nothing in the Proposed SAC suggests that Samford had to comply with federal directives, that his actions were subject to federal supervision, or even that he was following any federal training— and none of the Fifth Circuit's additional relevant factors points otherwise. *See Linkous*, 142 F.3d at 276.

True, DHS guidance on § 1357(g)(10) cooperation makes clear that state and local officers must operate within a federal-led immigration framework in which federal objectives are paramount and state or local action may not limit the federal government's discretion. *See El Cenizo*, 890 F.3d at 180. But even when crediting federal primacy in immigration policy and DHS's insistence that § 1357(g)(10) cooperation serve federal priorities, those points speak to who sets goals and policy,

- 17 -

not to who controls the detailed execution of such cooperation in general—much less of the particular pretextual traffic stop here.

Thus, even when taking the Proposed SAC's allegations at their strongest— and reading them alongside DHS guidance—they show, at most, federal primacy in immigration objectives, information-sharing between USBP and DPS, and that DPS conducts pretextual traffic stops to support USBP's goals. Within that framework, however, the Proposed SAC still alleges that Samford independently chose the method and means of his participation in the pretextual traffic stop, including how he maneuvered his vehicle in the moments leading to the collision.

And moreover, when compared to *Laible*, Samford's role most closely resembles that of Thomas, whom the Sixth Circuit viewed as too far removed from federal control. *Laible*, 91 F.4th at 445. In *Laible*, Thomas joined the chase at another CPD officer's request, operated under CPD policies, and was at least one step removed from any direct federal supervision. *Id.* So too here: even when viewing the allegations in the light most favorable to Plaintiffs, Samford was at least one degree removed from federal control, as the Proposed SAC at most suggests that USBP communicated with Martinez (also a DPS officer), who then relayed information to Samford, who in turn acted on it as a DPS officer. In other words, the Proposed SAC pleads no facts supporting an inference that Samford ever communicated directly with USBP—much less, that USBP authorized, directed, or supervised his actions.

## CONCLUSION

For the reasons above, the Court **DENIES** Plaintiffs' "Motion for Leave to File Second Amended Complaint" (ECF No. 18).

**So ORDERED and SIGNED this <u>11th</u> day of March 2026.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**